IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LEVAIL SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 CV _____ |
| | ) | |
| v. | ) | |
| | ) | JUDGE _____ |
| The CITY OF CHICAGO, Illinois, a | ) | |
| municipal corporation and Chicago | ) | MAGISTRATE JUDGE _____ |
| Police OFFICER TIM MANNING, | ) | |
| OFFICER HECTOR DAVILLA, and | ) | |
| SERGEANT ALLEN FINLEY | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

NOW COMES the PLAINTIFF, LEVAIL SMITH, by and through his attorneys, THE NORTHCUTT FIRM, P.C., and with the following complaint against Defendants CITY OF CHICAGO and Chicago Police OFFICER TIM MANNING, Chicago Police OFFICER HECTOR DAVILLA and Chicago Police SERGEANT ALLEN FINLEY who states as follows.

### PARTIES, JURISDICTION & VENUE

1. This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of PLAINTIFF's rights as secured by the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3. Venue is proper under 28 U.S.C. §1391(b), as the events giving rise to the claims

asserted in this complaint occurred within this District.

4. Plaintiff, LEVAIL SMITH was, at all relevant times, a resident of Chicago, Illinois.

5. Defendant OFFICER TIM MANNING was, at all relevant times, a Chicago Police Officer employed by the City of Chicago, a municipal corporation and public entity incorporated under the laws of Illinois.

6. Defendant OFFICER HECTOR DAVILLA was, at all relevant times, a Chicago Police Officer employed by the City of Chicago, a municipal corporation and public entity incorporated under the laws of Illinois.

7. Defendant SERGEANT ALLEN FINLEY was, at all relevant times, a Chicago Police Officer employed by the City of Chicago, a municipal corporation and public entity incorporated under the laws of Illinois.

## FACTS COMMON TO ALL COUNTS

8. Plaintiff, LEVAIL SMITH is a disabled veteran of the United States Marine Corps who was honorably discharged after serving in combat during Operation Desert Storm.

9. During his time as a United States Marine, PLAINTIFF SMITH served with distinction in combat and was awarded three Bronze Stars, a Combat Action Ribbon, a Navy Unit Commendation, the National Defense Services Medal, the Sea Service Deployment Ribbon, the Kuwait Liberation Medal (Saudi Arabia) and the Kuwait Liberation Medal (Kuwait).

10. As a result of his combat-related service, PLAINTIFF SMITH suffers from acute

post-traumatic stress disorder and was diagnosed as being 100% disabled as a result of his condition, the highest classification of disability allowed under the law for PTSD.

11. Like many veterans diagnosed with post-traumatic stress disorder, PLAINTIFF SMITH suffers from chronic anxiety, difficulty adapting to stressful situations and hypervigilance.

12. On July 4, 2014, PLAINTIFF was with a friend doing laundry at a laundromat near the intersection of Howard and Greenview in the Rogers Park neighborhood of Chicago. At one point, PLAINTIFF stepped outside and joined a group of men who were standing outside the laundromat.

13. While standing outside the laundromat, one of the men handed PLAINTIFF a can of beer he had been drinking. As PLAINTIFF took the can of beer in his hand, Defendant OFFICER MANNING and his partner watched from an unmarked car near PLAINTIFF'S location.

14. After observing PLAINTIFF on the sidewalk with the can of beer, Defendant MANNING rapidly accelerated his unmarked car toward the place where PLAINTIFF was standing next to the curb.

15. As both officers exited the unmarked vehicle and approached PLAINTIFF, Defendant OFFICER MANNING placed his hand on his gun in a manner visible to PLAINTIFF.

16. Based on his perception of what appeared to be unprovoked aggression on the part

of Defendant OFFICER MANNING after witnessing PLAINTIFF drink a beer on a public way, PLAINTIFF, believing he would be harmed by Defendant OFFICER MANNING, ran from the officers in a southbound direction.

17. As PLAINTIFF ran, Defendant OFFICER MANNING called on the radio for additional officers to help him pursue PLAINTIFF for the offense of drinking on a public way.

18. Immediately, scores of Chicago Police Officers converged in the area and began pursuing PLAINTIFF, a circumstance which only increased his anxiety and heightened his fear that he might be harmed by Defendant OFFICER MANNING who continued to pursue him.

19. As PLAINTIFF ran south from the intersection and the multiple officers who were now pursuing him, he reached a multi-unit apartment building located at 1511 Birchwood, hopped a fence approximately six feet in height and gained entry past the entryway vestibule.

20. Once he went past the vestibule, PLAINTIFF ran through an apartment after one of the residents opened his door. Plaintiff ran directly through the apartment and out through the rear door, exiting the building via an exterior door adjacent to the gangway.

21. When PLAINTIFF emerged from the exterior door, several officers were waiting with their guns drawn, positioned at different angles and shouting contradictory commands to turn around, put his hands up and get on the ground.

22. At the time the officer surrounded PLAINTIFF, it was clear based on the clothing he was wearing, their observation of his empty hands and the fact that he had not produced a weapon of any kind in the lengthy protected encounter that preceded his exit from the building, that PLAINTIFF was unarmed.

23. The effect of multiple officers surrounding him with their guns drawn and shouting contradictory orders, however, only escalated PLAINTIFF'S visibly panicked state. As PLAINTIFF grew increasingly terrified of being shot by Defendant OFFICER MANNING and others, PLAINTIFF began to scream and shout in a desperate attempt to draw the attention of nearby residents as to what was happening to him.

24. Seeing that he was surrounded by officers with their guns drawn, PLAINTIFF attempted to comply with their commands by staying in place and raising his hands as some of the officers were telling him to do.

25. At the moment PLAINTIFF began to raise his hands and submit to the arrest, Defendant OFFICER MANNING opened an exterior door and saw PLAINTIFF surrounded by the other officers.

26. Despite the fact that PLAINTIFF was unarmed, had nothing in his hands and was visibly panicked and confused by the officers' conduct, Defendant OFFICER MANNING pointed his gun at PLAINTIFF and began firing multiple times.

27. Seeing this, Defendant OFFICER DAVILLA, who could not even see PLAINTIFF'S hands or the physical position of PLAINTIFF'S body, began shooting PLAINTIFF based solely on the fact that Defendant OFFICER MANNING had fired.

28. As Defendant OFFICERS MANNING and DAVILLA fired multiple shots at PLAINTIFF, Defendant SERGENT FINLEY – who never saw PLAINTIFF with any type of weapon – fired his gun once at PLAINTIFF as he stood outside the building.

29. As Defendant OFFICERS MANNING, DAVILLA and SERGEANT FINLEY fired at the unarmed PLAINTIFF, PLAINTIFF was struck by five bullets in his chest, stomach, arm and legs and grazed by two bullets on his face and neck.

30. At no time in their encounter with the PLAINTIFF did any officer observe PLAINTIFF in possession of a weapon of any kind.

31. At no time in their encounter with PLAINTIFF did any officer observe PLAINTIFF with any object in his hand other than the beer he held and discarded at the intersection of Howard and Greenview.

32. At no point in their encounter with the PLAINTIFF did any officer observe PLAINTIFF with a weapon or any other object in his waistband.

33. At no point in their encounter with the PLAINTIFF did any officer observe PLAINTIFF with a weapon or any other object in his pocket, nor did they observe anything covered by PLAINTIFF'S clothing that appeared to be a weapon. No weapon was recovered at the scene or on PLAINTIFF'S person.

34. After shooting PLAINTIFF, DEFENDANT OFFICERS gave false and misleading accounts of the events to police supervisors and a police union representative at the scene in an effort to conceal their unjustified shooting of PLAINTIFF. These accounts were widely repeated in the media and falsely characterized as a "suicide

by cop."

35. Defendant OFFICERS were not interviewed under oath by investigators from the Independent Police Review Authority until the day after PLAINTIFF was shot and their accounts of the shooting had already appeared in the press. Each Defendant OFFICER claimed to be testifying "under duress" and repeated their false and misleading accounts of the shooting.

36. As a direct and proximate result of the Defendant's misconduct as fully detailed herein, PLAINTIFF suffered grave physical and psychological injuries that included physical harm from four gunshot wounds, permanent disfigurement and disability, as well as great mental anguish, humiliation, degradation, loss of reputation and anxiety.

## Count I:  §1983 Excessive Force

37. PLAINTIFF re-alleges paragraphs 1-36 as if fully restated here.

38. As more fully described in the preceding paragraphs, the intentional conduct of Defendant OFFICER MANNING, OFFICER DAVILLA and SERGEANT FINLEY toward PLAINTIFF was objectively unreasonable and constituted excessive force in violation of the Fourth Amendment and Fourteenth Amendments to the United States Constitution.

39. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of PLAINTIFF.

40. As a direct and proximate result of the use of excessive force by Defendants

OFFICER MANNING, OFFICER DAVILLA and SERGEANT FINLEY, PLAINTIFF has suffered and will continue to suffer physical and emotional damages which will be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against Defendant OFFICERS MANNING, OFFICER DAVILLA and SERGEANT FINLEY in a fair and just amount sufficient to compensate PLAINTIFF for the injuries he has suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

### Count II: State Law Claim for Assault and Battery

41. PLAINTIFF re-alleges paragraphs 1-40 as if fully restated here.

42. As more fully described in the preceding paragraphs, the conduct of Defendant OFFICERS MANNING, DAVILLA and SERGEANT FINLEY constituted an unjustified and offensive physical contact, undertaken willfully and wantonly, which proximately caused bodily injury to PLAINTIFF.

43. The misconduct as described herein was objectively unreasonable and was committed intentionally, with willful indifference to constitutional rights of PLAINTIFF.

44. The misconduct as described herein was committed with malice, willfulness, and reckless indifference to the rights of PLAINTIFF.

45. As a result of the offensive contact as described herein, PLAINTIFF sustained bodily and other injuries, including but not limited to a reasonable apprehension of great bodily harm.

WHEREFORE, PLAINTIFF prays for judgment against Defendant OFFICERS MANNING, DAVILLA and SERGEANT FINLEY in a fair and just amount sufficient to compensate PLAINTIFF for the injuries he has suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

### Count III: State Law Claim for Respondeat Superior

46. PLAINTIFF re-alleges paragraphs 1-45 as if fully restated here.
47. As more fully described in the preceding paragraphs, in committing the acts as alleged herein, Defendant OFFICERS MANNING, DAVILLA and SERGEANT FINLEY were members and agents of the Chicago Police Department and at all times relevant to this complaint, acted within the scope of their employment.
48. Defendant CITY OF CHICAGO is liable as principal for all torts committed by its agents.

WHEREFORE, PLAINTIFF prays for judgment against Defendant CITY OF CHICAGO in a fair and just amount sufficient to compensate PLAINTIFF for the injuries he has suffered, well as costs, attorney's fees, and such other relief as is just and equitable.

### Count IV: State Law Claim for Indemnification

49. PLAINTIFF re-alleges paragraphs 1-48 as if fully restated here.
50. Illinois law requires that public entities are to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

9

51. Defendant OFFICERS MANNING, DAVILLA and SERGEANT FINLEY are or were employees of the Chicago Police Department at all times relevant to this complaint who acted within the scope of their employment in committing the misconduct as detailed herein.

WHEREFORE, PLAINTIFF prays for judgment against Defendant CITY OF CHICAGO in a fair and just amount sufficient to compensate PLAINTIFF for the injuries he has suffered, well as costs, attorney's fees, and such other relief as is just and equitable.

**PLAINTIFF demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.**

LEVAIL SMITH, PLAINTIFF

By: __/s/ Lance Northcutt__
 Attorney for PLAINTIFF

THE NORTHCUTT FIRM
1 East Wacker Drive, Suite 3800
Chicago, Illinois 60601
312.953.9252
#6278144